E-FILED 12.02.11

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE WALLACE<br><br>                    Plaintiff,<br><br>          vs.<br><br>CITY OF LOS ANGELES, a California Municipality, LOS ANGELES POLICE DEPARTMENT, a government entity of unknown type, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, a governmental entity of unknown type, and DOES 1-100, inclusive,<br><br>                    Defendants. | CASE NO. CV 10-09363 MMM (FMOx)<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS IN PART AND PLAINTIFF'S COUNSEL'S MOTION TO WITHDRAW |

On December 7, 2010, plaintiff Joe Wallace initiated this action against certain unknown defendants, acting purportedly on behalf of the United States and the State of California.[1] The operative complaint lists only Wallace as plaintiff, and names the City of Los Angeles, Los Angeles Police Department ("LAPD"), Los Angeles Count Sheriff's Department and certain fictitious defendants.[2] On August 19, 2011, Los Angeles County ("County"), sued erroneously

---

[1] Verified *Qui Tam* Complaint ("Complaint"), Docket No. 1 (Dec. 7, 2010).

[2] Second Amended Complaint ("SAC"), Docket No. 18 (July 12, 2011).

as the Los Angeles Sheriff's Department, filed a motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[3] Wallace has opposed the motion to dismiss.[4] On September 22, 2011, Wallace's attorney, Christina A. DiEdoardo, file a motion to withdraw as counsel.[5] To date, neither plaintiff nor defendants have opposed that motion.

Both motions are currently on calendar for hearing on December 5, 2011. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds the matters appropriate for decision without oral argument and vacates the hearing scheduled for December 5, 2011.

# I. BACKGROUND

### A. Factual Allegations in the Complaint

Wallace alleges that in April 2005, he began a romantic relationship with an individual he calls Jane Roe, with whom he is no longer involved.[6] He asserts that Roe was previously involved romantically with an air unit officer of the LAPD.[7] To retaliate against Wallace, the officer allegedly conspired with the other defendants by initiating intensive helicopter surveillance of Wallace, including repeated fly-bys of low-flying helicopters.[8] Defendants also purportedly used "the law enforcement portal operated by [Wallace's] wireless phone carrier, Sprint, to track his

---

[3] Defendant County of Los Angeles' Motion to Dismiss ("Motion to Dismiss"), Docket No. 24 (September 19, 2011).

[4] Opposition to Motion to Dismiss Filed by County of Los Angeles, Docket No. 33 (November 28, 2011).

[5] Motion to Withdraw as Counsel for Plaintiff ("Motion to Withdraw"), Docket No. 27 (September 22, 2011).

[6] SAC, ¶ 9. Wallace requests that he be allowed to use a pseudonym until a protective order can be entered.

[7] *Id.*, ¶ 10.

[8] *Id.*, ¶¶ 11-13.

phone and therefore track him."[9] Wallace asserts that he complained to the Federal Bureau of Investigation, the United States Secret Service, LAPD's Internal Affairs Division, and the United States Attorney for the Central District of California.[10]

Marshall pleads four claims: (1) a *Monell* claim based on failure to train, supervise, monitor, and take proper corrective action regarding the allegedly wrongful conduct; (2) intentional infliction of emotional distress; (3) negligent supervision; and (4) declaratory relief that the alleged surveillance is improper.[11]

### B. Counsel's Motion to Withdraw

DiEdoardo asserts that she agreed to represent Wallace for the limited purpose of seeking legal redress for defendants' alleged harassment and retaliation.[12] At the time Wallace and DiEdoardo entered into a retainer agreement, the representation was allegedly limited to the filing of a complaint and the filing and argument of a motion for leave to take discovery prior to the Rule 26(f) scheduling conference; DiEdoardo states that the goal was to allow Wallace to determine who was controlling the helicopters that were purportedly monitoring him.[13] She reports that she complied with her obligations under the retainer agreement, and only withdrew the motion for leave to take discovery at the request of the State of California.[14] After the state advised DiEdoardo that it did not believe Wallace had viable *qui tam* claims, she filed a first amended complaint. After she learned that Magistrate Judge Patrick Walsh was unwilling to grant leave to conduct discovery with no named defendants in the action, DiEdoardo filed a second

---

[9]*Id.*, ¶ 14.

[10]*Id.*, ¶ 16.

[11]*Id.*, ¶¶ 18-37.

[12]Motion to Withdraw as 4. These assertions are included in an "affidavit" by DiEdoardo that appears in the text of the motion.

[13]*Id.* at 5.

[14]*Id.*

3

amended complaint.[15]

DiEdoardo asserts that, while she has attempted to keep Wallace informed of the progress of the action, he has repeatedly called her multiple times a day, and sent multiple email messages, sometimes seconds apart.[16] Last summer, Wallace allegedly flew to San Fransisco to meet with DiEdoardo without making an appointment or attempting to determine if DiEdoardo was available for a meeting.[17] DiEdoardo asserts that, as a solo practitioner with no support staff, she would be unable to represent her other clients effectively if she responded promptly to each of Wallace's update requests.[18]

In August, DiEdoardo allegedly told Wallace that she could no longer represent him, and sent him a substitution of attorney form.[19] Wallace, however, did not return the form and has not retained a substitute attorney.[20] DiEdoardo attests that she ordinarily charges $200/hour for her services, and has worked approximately 24.69 hours on this case, for a total of $4,938 in fees.[21] Wallace paid her $2,500 at the time the retainer agreement was signed, and has made no payments since.[22] DiEdoardo states in her motion that she will waive any recovery of the remaining fee balance and that she will file opposition to the County's motion to dismiss.[23]

---

[15]*Id.* at 5-6.

[16]*Id.* at 6.

[17]*Id.*

[18]*Id.*

[19]*Id.* at 6-7.

[20]*Id.* at 7.

[21]*Id.*

[22]*Id.*

[23]*Id.*

## II.  DISCUSSION

### A.  Plaintiff's Failure to File Timely Opposition

Local Rule 7-12 provides that "[t]he failure to file any required paper, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion." CA CD L.R. 7-12. Parties are required to file opposition briefs no later than 21 days before the date designated for the hearing on the motion. CA CD L.R. 7-9. As noted, no opposition was filed to the motion to withdraw. Plaintiff's opposition to the motion to dismiss was filed on November 28, 2011, seven days before the hearing, or two weeks late. Under Rule 7-12, the court could grant both motions on this basis alone. See *Cortez v. Hubbard*, No. CV 07-4556-GHK (MAN), 2008 WL 2156733, *1 (C.D. Cal. May 18, 2008) ("Petitioner has not filed an [o]pposition to the [m]otion and has not requested any further extension of time to do so. Pursuant to Local Rule 7-12, his failure to do so could be deemed to be consent to a grant of the [m]otion"); *Mack-University LLC v. Halstead*, No. SA CV 07-393 DOC (ANx), 2007 WL 4458823, *4 n. 4 (C.D. Cal. Sept. 25, 2007) (holding, where a party "failed to oppose or in any way respond" to a motion, that "[p]ursuant to local Rule 7-12, the [c]ourt could grant [p]laintiffs' [m]otion on this ground alone"); *Ferrin v. Bias*, No. ED CV 02-535 RT (SGLx), 2003 WL 25588274, *1 n. 1 (C.D. Cal. Jan. 2, 2003) ("Under Local Rule 7-12, failure to file an opposition may be deemed consent to the granting of the motion"). Nonetheless, the court reviews the merits of the motions below.

### B.  Defendant's Motion to Dismiss

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).

The court need not, however, accept as true unreasonable inferences or legal conclusions

cast in the form of factual allegations. See *Bell Atlantic Corp. v. Twombly*, 540 U.S. 544, 553–56 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). Thus, a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); see also *Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)" (citations omitted)); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly*). As this standard was explained by the Ninth Circuit in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011): "[T]o be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."

### 1.     Whether Plaintiff Complied with California Government Code § 945.4

The County argues that Wallace's state law claims must be dismissed because he failed to present the claims to defendants before suing.[24] California Government Code § 945.4 provides in relevant part that "no suit for money or damages may be brought against a public entity . . . until a written claim therefor has been presented to the public entity and has been acted upon by

---

[24] Motion to Dismiss at 2-3.

the board, or has been deemed to have been rejected by the board." *Ford v. Long Beach Unified School Dist*, 461 F.3d 1087, 1090 (9th Cir. 2006); see also *Dean v. Sausalito-Marin City Sanitary Dist.*, No. 95-15363, 1996 WL 490786, *1 (9th Cir. Aug. 28, 1996) ("The Tort Claims Act provides that presentation of a claim for money or damages against a local public entity, and action thereon by the entity, are prerequisites to filing a civil lawsuit for damages"). "The primary function of the [Government Tort Claims Act (§ 810, et seq.)] is to apprise the governmental body of imminent legal action so that it may investigate and evaluate the claim and where appropriate, avoid litigation by settling meritorious claims." *Turner v. State of California*, 232 Cal.App.3d 883, 888 (1991) (alteration original).[25]

By its terms, § 945.4 applies only to suits for "money damages." In his prayer for relief, Wallace seeks "an order directing defendants to cease and desist their inappropriate harassment." He also requests, however, an award of compensatory damages and $1,000,000 in punitive damages for each year since 2005. "The claims filing requirement remains applicable to actions in which money damages are not incidental or ancillary to any specific relief that is also sought, but the primary purpose of the action." *Gatto v. County of Sonoma*, 98 Cal.App.4th 744, 762 (2002); *Williams v. City of Antioch*, No. C 08-02301 SBA, 2010 WL 3632199, *4. (N.D. Cal. Sept. 2, 2010) (same).

The damages Wallace seeks are sizable: $1,000,000 in punitive damages for each year of more than six years of allegedly wrongful conduct, plus compensatory damages. The court cannot find such damages ancillary or incidental. *Williams*, 2010 WL 3632199 at *5 ("By Plaintiffs' own estimate, the proposed class comprises approximately 1,000 members, which would lead to statutory minimum damage award of $4 million for the class. Additionally, the named Plaintiffs

---

[25]As the County tacitly acknowledges by requesting dismissal only of Wallace's state law claims, the "state claim presentment requirements cannot be applied to federal civil rights actions," including Wallace's first cause of action. *Ford v. Long Beach Unified School Dist.*, 461 F.3d 1087, 1089-90 (9th Cir. 2006) (citing *Stanley v. Trustees of the Cal. State Univ.*, 433 F.3d 1129, 1135 (9th Cir. 2006), and *Felder v. Casey,* 487 U.S. 131, 140, (1988) (reasoning that "the absence of any notice-of-claim provision is not a deficiency requiring the importation of such statutes into the federal civil rights scheme")).

7

seek up to treble their actual damages. Plaintiffs have cited no authority finding such a damage amount to be 'ancillary' or 'incidental'" (citation omitted)). Additionally, the declaratory relief he seeks would vindicate only his own rights, not anyone else's. See *Woodward v. Subia*, No. CIV S-07-498 JAM KJM P, 2008 WL 4196692, *4-5 (E.D. Cal. Sept. 11, 2008) ("Although plaintiff seeks injunctive and declaratory relief, he seeks to vindicate only his own rights. While his initial prayers are for injunctive and declaratory relief, he seeks monetary sanctions beyond the replacement cost of the photographs if they cannot be returned or replaced. Moreover, he seeks punitive damages of $15,000 per defendant even if he recovers the property he alleges was taken; these damages cannot be deemed inconsequential to 'the effect of the declarations [he] seeks.' Compliance with the Claims Act was required"). The court concludes, therefore, that Wallace was required to comply with the claim presentment requirement before asserting his second and third causes of action.

Wallace does not allege that he has complied with § 945.4, however, and his second and third causes of action must accordingly be dismissed. *Adams v. Kraft*, No. 10-CV-00602-LHK, 2011 WL 846065, *12-13 (N.D. Cal. Mar. 8, 2011) ("Because Plaintiff has not alleged compliance with § 945.4, all of Plaintiff's state law claims are dismissed with leave to amend"); *Elder-Evins v. Casey*, No. C 09-05775 SBA, 2010 WL 3619808, *4 (N.D. Cal. Sept. 9, 2010) ("Plaintiff has not alleged in her Complaint or opposition papers that she complied with the CTCA. As such, to the extent her claims seek damages against the County Defendants in their official capacities, those claims fail").[26]

Wallace's fourth cause of action incorporates the wrongful conduct alleged in the balance of the complaint. It seeks a judgment "resolving the question of whether the surveillance is proper" and an order directing defendants immediately to cease and desist their activities against him.[27] California courts have held that where nonmonetary relief is incidental to the money damages sought, claims for declaratory and injunctive relief can be dismissed for failure to comply

---

[26]SAC at 7.

[27]*Id.*, ¶¶ 32, 34.

8

with the claim presentment requirement. See *Hart v. Alameda County*, 76 Cal.App.4th 766, 782 (1999) ("The Claims Act generally applies only to claims for money or damages, and not to actions for declaratory relief. This exception does not apply, however, where the demand for nonmonetary relief is merely incidental or ancillary to a prayer for damages"); see also *Spiteri v. State*, 2d Civil No. B186303, 2007 WL 1941438, *7 (Cal. App. July 5, 2007) ("The claim for declaratory and injunctive relief in the fifth cause of action was incidental or ancillary to the claim for damages in the first through fourth causes of action. The primary purpose of the third amended complaint was to obtain monetary relief. As to each of the first four causes of action, appellant sought '[a] monetary award not less than $1,500,000.00,' as well as punitive damages. Thus, the fifth cause of action was also subject to demurrer to the extent that it was based on state law"); *O'Sullivan v. City of San Diego*, No. D047382, 2007 WL 2570783, *9 (Cal. App. Sept. 7, 2007) (" The Claims Act generally operates to bar only claims for money or damages, and not claims for nonmonetary relief, if claims for those money damages are not presented to City before a lawsuit is filed. . . . Therefore, we focus on the relief requested on each cause of action in a complaint to determine whether the Claims Act's presentation requirements apply. If a cause of action is alleged for which the plaintiff seeks primarily nonmonetary relief, the Claims Act is not applicable to recovery of that nonmonetary relief and the plaintiff's cause of action is not barred by the plaintiff's failure to present that nonmonetary claim or a related monetary claim to the governmental entity"); see also *id.* at *9 n. 16 ("Because the declaratory and injunctive relief sought by O'Sullivan in this case is the primary relief sought in her complaint, we do not address, or decide, whether the Claims Act precludes nonmonetary relief merely incidental to money damages sought by her").[28]

Wallace's fourth cause of action seeks only nonmonetary relief. Because he alleges that

---

[28] "Although the court is not bound by unpublished decisions of intermediate state courts, unpublished opinions that are supported by reasoned analysis may be treated as persuasive authority." *Scottsdale Ins. Co. v. OU Interests, Inc.*, No. C 05-313 VRW, 2005 WL 2893865, *3 (N.D. Cal. Nov. 2, 2005) (citing Employers Ins. of Wausau v. Granite State Ins. Co., 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value")).

defendants' wrongful activity is ongoing that is causing him damage, the court cannot, at this point, conclude that this claim is merely ancillary or incidental to Wallace's claims for monetary damages. Compare *Desman, Inc. v. City of San Joaquin*, No. F051863, 2008 WL 2791872, *1 (Cal. App. July 21, 2008) ("[A]lthough couched in terms of specific performance, the complaint seeks money from respondents. If ordered to clear or assume appellant's tax liability, respondents would, in effect, be making a payment of money to appellant. This procedure simply deletes one step in the process, i.e., appellant physically making its own tax payment. Therefore, appellant's complaint is subject to the two-year [Tort Claims Act] statute of limitations."). Accordingly, the court concludes that § 945.4 does not bar plaintiff's fourth cause of action.

The County argues that the second and third causes of action should be dismissed with prejudice, because Wallace cannot truthfully allege that he filed a tort claim with it.[29] "If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Nothing in the complaint establishes definitively that Wallace did not comply with the presentment requirement as respects his claims against the County or his claims against the City defendants. Thus, the court dismisses Wallace's second and third causes of action with leave to amend.

### 2. Whether Plaintiff Complied with California Code of Civil Procedure § 335.1

The County next argues that all of Wallace's claims are barred by the relevant statute of limitations.[30] California Code of Civil Procedure § 335.1 provides that the statute of limitations in "[a]n action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another" is two years. This provision applies to both of Wallace's state law claims. *Lauter v. Anoufrieva*, No. CV 07-6811 JVS (JC), 2010 WL 3504745, *23 (C.D. Cal.

---

[29]Motion to Dismiss at 3.

[30]Motion at 4.

10

1  July 14, 2010) (two years is the applicable limitations period for intentional infliction of emotional
2  distress claims); *Ford v. Wells Fargo Home Mortg.*, No. 08-4276 SC, 2008 WL 5070687, *5
3  (N.D. Cal. Dec. 1, 2008) ("The statute of limitations for a negligent supervision claim is two
4  years," citing *Unruh-Haxton v. Regents of Univ. of Cal.*, 162 Cal.App.4th 343, 357(2008)).
5  Section 1983 does not contain a statute of limitations. Rather, federal courts apply the forum
6  state's personal injury statute of limitations for § 1983 claims. In California, this is two years.
7  *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999) (citing *Wilson v. Garcia*, 471 U.S. 261, 276
8  (1985)); see also *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004) (a two year statute of
9  limitations applies to § 1983 claims in California actions).

10  Wallace alleges that he began his relationship with Roe in April 2005, and that "[s]ince
11  then," he has been subject to surveillance and helicopter fly-bys.[31] Drawing all inferences from
12  the pleading in Wallace's favor, the court concludes that Wallace's claims are not time-barred to
13  the extent they rely on conduct that occurred within two years of the filing of the complaint, i.e.
14  conduct occurring on or after December 7, 2008. While Wallace cannot recover for conduct that
15  occurred before this date, the prior conduct may nonetheless be relevant as background
16  information concerning the claims that remain viable. *Darensburg v. Metropolitan Transp.*
17  *Com'n*, No. C-05-01597 EDL, 2006 WL 167657, *9 (N.D. Cal. Jan. 20, 2006) ("Plaintiffs . . .
18  are alleging present and ongoing discrimination; the background and historical information alleged
19  in the complaint can be relevant to the ongoing discrimination" even if it falls within the time bar
20  of § 335.1).

### 3. Conclusion Regarding the County's Motion to Dismiss

For the reasons stated, the County's motion to dismiss Wallace's second and third causes of action is granted. Wallace's motion to dismiss Wallace's fourth causes of action is denied. Wallace's motion to dismiss Wallace's first cause of action to the extent it is based on conduct that occurred within two years of the filing of the complaint, i.e. conduct occurring on or after December 7, 2008.

---

[31] Second Amended Complaint, ¶¶ 9-13.

### C. Standard Governing Leave To Withdraw

Local Rule 83-2.9.2.1 provides that "[a]n attorney may not withdraw as counsel except by leave of court. An application for leave to withdraw must be made upon written notice given reasonably in advance to the client and to all other parties who have appeared in the action." CA CD L.R. 83-2.9.2.1. Attorneys do not have an absolute right to withdraw from representation at any time. Even where grounds for termination exist, attorneys seeking to withdraw must comply with the procedures set forth in Rule 3-700 of the California Rules of Professional Conduct, and are subject to discipline for their failure to do so. See *Slavkin v. State Bar*, 49 Cal.3d 894, 903 (1989); *Matter of Miller*, 1 Cal. State Bar Ct. Rptr. 131, 135 (Rev. Dept. 1990). An attorney may not withdraw from a representation until he or she has taken "reasonable steps to avoid reasonably foreseeable prejudice to the rights of the client . . . and compl[ied] with applicable laws and rules." CAL. RULES PROF. CONDUCT 3-700(A)(2).

#### 1. Good Cause

A breakdown in communications between client and attorney constitutes good cause to permit an attorney's withdrawal from representation of a client. See *Capital Communications v. Lucent Technologies*, No. C02-1859, 2004 WL 201596, *1 (N.D. Cal. Jan. 16, 2004) (granting a motion to withdraw where counsel's attempts to communicate with the plaintiff and obtain its cooperation had been futile); *Oscar de la Renta Ltd. v. Strelitz Ltd.*, CV-92-3907, 1993 WL 205150, *1 (S.D.N.Y. June 7, 1993); *Dunn v. Regents of University of California*, No. C-89-2272, 1993 WL 128079, *1 (N.D. Cal. Apr. 14, 1993) (noting that the court had previously granted plaintiff's counsel's motion to withdraw based on a "breakdown of communications" with the client); *TSC Leasing Corp. v. M.I.A. Distributors, Inc.*, 88-CV-2865, 1989 WL 58425, *2 (E.D.N.Y. May 24, 1989) (counsel allowed to withdraw where client failed to communicate with counsel); *Statue of Liberty v. Int'l United Indus., Inc.*, 110 F.R.D. 395, 397 (S.D.N.Y. 1986) (granting a motion to withdraw because the client failed to answer the attorney's telephone calls and letters "regarding the conduct of the litigation in general and the scheduling of depositions in particular" and failed to pay attorneys' fees).

Here, Wallace is, if anything, overeager to communicate with his attorney. Nonetheless,

the court recognizes that an unreasonably demanding client, especially one who shows up unannounced to meet with his attorney, can create a strained relationship that weighs in favor of allowing the attorney to withdraw. Cf. CAL. RULES PROF. CONDUCT 3-700(C)(1)(d) (attorney may withdraw if "[t]he client . . . renders it unreasonably difficult for the member to carry out the employment effectively").[32]

More fundamentally, it appears that the retainer agreement between Wallace and DiEdoardo required only that DiEdoardo prepare and file a complaint, and file and argue a motion for leave to take expedited discovery.[33] DiEdoardo filed a complaint and two amended complaints, and moved for expedited discovery twice.[34] A comment accompanying the California Rules of Professional Conduct expressly permit an agreement between a client and counsel that "reasonably limit[s] the scope of the member's employment or representation." Comment, CAL. RULES PROF. CONDUCT 3-400. Given that Wallace did not know prior to commencing suit the identity of the agencies or individuals committing the misconduct about which he complains, an agreement to represent Wallace only through efforts to discover possible defendants' identities was reasonable.[35] The court concludes that DiEdoardo has met the obligations of her agreement with Wallace, and thus has good cause to withdraw as his counsel.

### 2. Notice to Client

Counsel is required to give a client advance notice of his or her intention to seek permission to withdraw. See CAL. RULES PROF. CONDUCT 3-700(A)(2); CA CD L.R. 83.2.9.2.1 ("An

---

[32] Motion to Withdraw at 6.

[33] *Id.* at 5.

[34] See Motion for Discovery Prior to the FED.R.CIV.P. 26(f) Conference Pursuant to FED.R.CIV.P. 26(d)(1), Docket No. 5 (Jan. 18, 2011); Renewed Motion for Discovery Prior to the FED.R.CIV.P. 26(f) Conference Pursuant to FED.R.CIV.P. 26(d)(1), Docket No. 13 (May 10, 2011).

[35] In her affidavit, DiEdoardo reports that Wallace has paid approximately half of the fees he has incurred. She does not move to withdraw on this basis, however, and it is unclear whether Wallace has been billed for the additional fees.

attorney may not withdraw as counsel except by leave of court. An application for leave to withdraw must be made upon written notice given reasonably in advance to the client and to all other parties who have appeared in the action"). DiEdoardo asserts that she told Wallace in August 2011 he would have to secure replacement counsel, and that she sent him a substitution of attorney form.[36] DiEdoardo filed her motion to withdraw on September 22, 2011, and served it on Wallace. Wallace has had more than two months to oppose the motion and/or retain new counsel. Defendants likewise have had more than two months to object to the motion to withdraw, and have not done so.

Consequently, the court concludes that DiEdoardo has satisfied the notice requirements associated with seeking leave to withdraw.

### 3.  Prejudice

"A lawyer violates his or her ethical mandate by abandoning a client, or by withdrawing at a critical point and thereby prejudicing the client's case." *Ramirez v. Sturdevant*, 21 Cal.App.4th 904, 915 (1994) (citing CAL. RULES PROF. CONDUCT 3-700(A)(2); *Pineda v. State Bar*, 49 Cal.3d 753, 758-59 (1989); and *Vann v. Shilleh*, 54 Cal.App.3d 192, 197 (1975)). An attorney may withdraw from a case, however, "when withdrawal can be accomplished without undue prejudice to the client's interests." *Id.*

Given the posture of the action, there is no reason to believe that Wallace will be unduly prejudiced if DiEdoardo is permitted to withdraw. The litigation is still in its early stages and no motions are pending. The only impending deadline is the deadline by which an amended complaint must be filed following the court's granting of the County's motion to dismiss. The court will give Wallace more time than is customary to file an amended pleading, so that he can retain new counsel or prepare a *pro se* complaint. Consequently, counsel's withdrawal will not unduly prejudice Wallace.

---

[36]Motion to Withdraw at 6-7.

### III. CONCLUSION

For the reasons stated, the County's motion to dismiss Wallace's second and third causes of action is granted. Wallace's motion to dismiss Wallace's fourth causes of action is denied. Wallace's motion to dismiss Wallace's first cause of action to the extent it is based on conduct that occurred within two years of the filing of the complaint, i.e. conduct occurring on or after December 7, 2008. While the court concludes that Wallace's claims are not barred by the statute of limitations, it finds that the only actionable conduct is that which occurred within two years of the filing of the complaint. Wallace may file an amended complaint addressing the deficiencies noted in this order within thirty (30) days of the date of this order.[37]

The court grants the motion to withdraw filed by Wallace's counsel. DiEdoardo is directed to serve of copy of this order on Wallace immediately upon receipt, and no later than two days after the date it bears, and to file a proof of service within three days after the order is docketed.

DATED: December 2, 2011

*Margaret M. Morrow*
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

---

[37]The court customarily grants plaintiffs twenty days to amend. The additional time is appropriate to allow Wallace to retain new counsel and file an amended pleading with the assistance of that counsel.